UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
:
LINDA COHEN and ROLANDO COHEN, individually :
and as Parents and Natural Guardians of M.C., :
:   18-CV-11100 (JMF)
Plaintiffs, :
:   MEMORANDUM OPINION
-v- :   AND ORDER
:
NEW YORK CITY DEPARTMENT OF EDUCATION, :
:
Defendant. :
:
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

    Plaintiffs Linda and Rolando Cohen, proceeding individually and on behalf of their minor child M.C., seek a temporary restraining order ("TRO") requiring the New York City Department of Education ("DOE") to fund M.C.'s placement at his current school, the International Institute for the Brain ("iBRAIN"), pending DOE's appeal in a parallel state administrative proceeding. Because the Court lacks jurisdiction over the dispute, Plaintiffs' motion is DENIED, and the case is DISMISSED.

    M.C., a young boy, is "non-verbal and non-ambulatory and has highly-intensive management needs" as a result of a brain injury. Docket No. 1 ("Compl.") ¶ 7. M.C.'s disabilities necessitate an "Individualized Education Program" that caters to his needs. *Id.* ¶ 8. In the summer of 2018, Plaintiffs transferred M.C. to his current school, iBRAIN, without DOE's permission. *Id.* ¶¶ 12-13. Plaintiffs thereafter filed a due process complaint alleging that DOE was denying M.C. the free and appropriate public education mandated by federal law for the 2018-19 school year, and requested an order (1) that DOE fund M.C.'s placement at iBRAIN and (2) that iBRAIN be considered M.C.'s "pendency placement" — his educational placement

pending resolution of his underlying due process complaint. *Id.* ¶¶ 14-16. While the underlying due process complaint has yet to be resolved, an impartial hearing officer ("IHO") found that iBRAIN was M.C.'s pendency placement during the ongoing due process proceedings, and ordered DOE to fund his placement there pending resolution of Plaintiffs' due process complaint. *Id.* ¶ 17. DOE has appealed the pendency order to a State Review Officer ("SRO"), and has refused to fund M.C.'s placement at iBRAIN pending appeal of that order. *Id.* ¶¶ 18-19. On November 28, 2018, Plaintiffs applied for a TRO requiring DOE to fund M.C.'s placement pending a decision by the SRO, which is expected within weeks. *Id.*; Docket Nos. 7, 11, ¶ 23.

Before proceeding to the merits of the TRO, the Court must address DOE's argument that Plaintiffs lack standing to sue because they have neither suffered, nor are about to suffer, an injury-in-fact. To invoke the Court's jurisdiction under Article III of the Constitution, Plaintiffs bear the burden of demonstrating that they have suffered "an injury in fact," *Spokeo, Inc. v. Robins*, 578 U.S. —, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016), which is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical," *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Spokeo*, 136 S. Ct. at 1548). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted).

The primary harm flowing from DOE's unwillingness to comply with the IHO order pending appeal, Plaintiffs argue, is the "imminent risk of [M.C.'s] expulsion due to outstanding tuition bills." Docket No. 15 ("Pls' Reply"), at 17. Plaintiffs put forward no evidence, however, that iBRAIN has even requested payment from Plaintiffs for M.C.'s tuition, much less threatened to expel him on that basis. Nowhere in the briefs, affidavits, declarations, exhibits, or transcript

pages from the TRO hearing is there the slightest suggestion, from anyone, that M.C. is presently at risk of being expelled from iBRAIN. At most, Plaintiffs *suggest* that, on one reading of their contract with iBRAIN — an implausible reading, as discussed below — the outstanding tuition *could be* demanded now and, if so, iBRAIN *could* terminate M.C.'s enrollment with sixty days' notice. *See* Pls' Reply 7-8. But that does not add up to an "actual or imminent" present harm to Plaintiffs. Nor does it demonstrate a "substantial risk" that M.C. will be expelled for nonpayment in the future. *See Susan B. Anthony List*, 573 U.S. at 158. These deficiencies alone suffice to conclude that M.C.'s risk of expulsion for nonpayment is "conjectural" and "hypothetical," *John*, 858 F.3d at 736, and that Plaintiffs therefore lack standing.

Over and above that, Plaintiffs fail to establish that M.C.'s tuition bills are "outstanding" in the first place. The enrollment contract between Plaintiffs and iBRAIN provides that if parents "file a complaint against the local school district for funding" to assert a student's "due process rights," the parents' payment obligations are suspended "until a *final determination/decision* is issued by an administrative judge or appellate court, and then all monies then-due . . . become immediately due within thirty (30) days of the *final adjudication*." Docket No. 8-1, at 8 (emphasis added). By its own terms, then, the contract provides for the suspension of a parent's obligation to pay tuition until thirty days after the "final adjudication" of the student's "due process rights" — that is, until after the student's underlying *due process* proceeding is resolved, not the *pendency* proceeding, which determines the student's placement pending the resolution of the ongoing due process complaint.[1] In this case, the underlying due

---

[1] Plaintiffs' contrary reading of the provision — that payment is triggered by an impartial hearing officer's decision on the student's pendency placement — would decouple the "due process rights" described in the contract provision from the "final adjudication" of those rights mentioned in the very next sentence. *See* Pls' Reply 8. Moreover, it would assign importance to a particular proceeding, the pendency proceeding, neither mentioned nor alluded to in the

3

process complaint has not been resolved, so under the plain language of the enrollment contract, Plaintiffs have no obligation even to make tuition payments for M.C. That is consistent with the dearth of evidence or allegation that iBRAIN has requested payment from Plaintiffs.

In sum, Plaintiffs' theory of harm posits a speculative injury — expulsion — based on a dubious premise — that M.C.'s tuition is currently owing. Because this harm is thus doubly "hypothetical" and "conjectural," *John*, 858 F.3d at 736, Plaintiffs have not suffered an injury-in-fact sufficient for Article III standing, and their Complaint must be dismissed. *See, e.g.*, *S.W. v. New York City Dep't of Educ.*, 646 F. Supp. 2d 346, 357-58 (S.D.N.Y. 2009).

Even if Plaintiffs *did* have standing, they would still not be entitled to a TRO — because, *a fortiori*, they cannot show the irreparable harm necessary for injunctive relief. *See, e.g.*, *J.Z. v. New York City Dep't of Educ.*, 281 F. Supp. 3d 352, 359 (S.D.N.Y. 2017). To be sure, the Second Circuit has declared that the "stay-put" provision of the Individuals with Disabilities Education Act at issue here, *see* 20 U.S.C. § 1415(j), "is, in effect, an automatic preliminary injunction" that "substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of . . . irreparable harm." *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982); *see also, e.g.*, *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 15-CV-9679 (NSR), 2018 WL 4103494, at *3 (S.D.N.Y. Aug. 28, 2018). That directive has less purchase, however, in a case where there is no meaningful threat that a student will be removed from his pendency placement. This is such a case — perhaps a *sui generis* one, by virtue of the enrollment contract *itself* containing what is, in effect, a "stay-put" provision ensuring that M.C. may remain at iBRAIN, and no tuition immediately owed, pending the resolution of Plaintiffs'

---

contract at all. Such a construction would run afoul of basic principles of contract interpretation. *See, e.g.*, *Kinek v. Paramount Commc'ns, Inc.*, 22 F.3d 503, 509 (2d Cir. 1994); *Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467-68 (2d Cir. 2010).

4

due process complaint. Docket No. 8-1, at 8. In light of that provision, Plaintiffs stand to lose nothing that cannot await resolution of the DOE's appeal of the pendency order within the next three weeks. *See* Docket No. 11 ¶¶ 16, 17, 23; N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(k)(2). Absent a showing — any showing — that Plaintiffs will be harmed before then, this Court will not grant the "extraordinary" and "drastic" remedy they seek. *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005) (Sotomayor, J.).

In the final analysis, what Plaintiffs seek is the possibility of a windfall — DOE funding of M.C.'s pendency placement that, should the pendency order be reversed on appeal, they were not entitled to in the first place, but which they would not have to reimburse. Notably, they admit as much in their briefs. *See* Pls' Reply 6. Plaintiffs offer no rational, non-conclusory argument for why they should receive money that they would not have to pay back and to which they may not have a right at all. Accordingly, Plaintiffs suffer no harm, irreparable or constitutional, based on the withholding of such money for the remaining three weeks in which M.C.'s pendency order is disputed. The Court has sympathy for the Plaintiffs during what must be a costly, trying, and seemingly perpetual bureaucratic process to ensure M.C. gets the education he needs. In a different case, where a student's education truly hung in the balance, or pendency rights were truly being violated, the Court might reach a different result. But it declines to enter the fray, and to grant extraordinary relief, where no true danger exists; where such relief may be unmerited in the first place; and where, as here, the issue will be fully resolved in a matter of weeks through the ordinary administrative appeals process.

For those reasons, the case is DISMISSED for lack of jurisdiction. The Clerk of Court is directed to terminate Docket No. 7 and close the case.

SO ORDERED.

Dated: December 12, 2018
New York, New York

_____
JESSE M. FURMAN
United States District Judge